Thank you. Good morning. Welcome, everyone, to the Ninth Circuit Court of Appeals. It's a pleasure to be here, especially on such a beautiful day here in San Francisco. Before we begin, I want to just take a moment. Judge Wallace and I would like to thank Judge Lasnik, who's sitting here by designation. He's here from the Western District of Washington, a district court there, trial judge there. And we're just very pleased to have him join us here today and to assist us with our caseload. Thank you. Judge Lasnik, thank you so much. We have a number of cases on the docket here today, but a couple of them have been submitted. And I'll just call the cases in the order that they are listed on the docket. And the first case this morning is the case of Zany Zyang Chao v. William Barr. And I apologize if I misstated the name of your client. I'm not sure I could do any better, Your Honor. So if you're ready to proceed, I think we're ready to proceed. Thank you very much. And can the court hear me? Yes. Yes. Thank you. So good morning, and may it please the court. My name is Jerome Mayorkentu, and I represent the petitioner. May I ask the court for two minutes of rebuttal time? I will try to watch your time as well, but you're ultimately accountable for it. We'll do our best, Your Honor. Okay. So as I see it, this case boils down to one question, and that is whether a reasonable adjudicator would be compelled to disagree with the agency's decision regarding my client's testimony and whether it was credible. So the government argues that there are two inconsistencies in my client's testimony, and I will walk through those unless the court has any other questions that you would like me to address first. If not, I'll start with the government's primary argument. So the government asserts that my client testified that he did not apply for a passport until after he was arrested, detained, interrogated, and beaten by Chinese government officials. The government then concludes that this testimony must have been false because all of this occurred after the passport's issue date. The problem with the government's theory, however, is that it's based on a misreading of the record. My client was never asked when he applied for his passport. He asked when he got the passport. And he correctly and accurately testified that he got it after its issuance date. But he testified that going to jail was the incident that required him to leave. That was — but he applied for the passport before. Obviously, if a person applies for a passport, they intend to leave. Why wouldn't a logical person looking at that say that that's sufficient to show that he's not being truthful? So, Your Honor, I think that the government is really trying to read between the lines here. And I think that the testimony, to be precise, was that he was asked why he applied for asylum. That's what the government cites. Yes. And he said? Because in China, I practice Christianity, and I was detained, arrested, and fined by the Chinese government. And I lost my job, and I couldn't lead a normal life. So I think the government — And that was something that happened after he applied for the passport? That's correct, Your Honor. But — So did he — when he applied for the passport, he wasn't planning to come to the United States? That makes no sense, does it? Your Honor, I think that my client was never asked about this, and he never testified about this. So we're really talking about a silence in the record. Now, the government had an — It's not silent. Your Honor, I think that the issue — It's not silent when he applied for the passport. It's not silent when he went to jail, five or six days after. It's not silent that that was the motivating factor he said he had for coming. Your Honor, I think — let me try a different tack. I think that — I'm having trouble with your argument. I understand, Your Honor. And I think that if the government really did want to lay this trap, it should have asked my client — Laid this what? — when he applied for the passport. But — When the government did what? That they should have — the government should have asked when he applied — When they laid this trap? Yes, the impeachment trap that they're trying to assert was sprung in this case. So they should have asked not a vague question, why did you apply for asylum? They should have asked a precise question that said, when did you apply for this passport? And only then can — do you really have a meaningful inconsistency. But even if I'm wrong, and the court believes that there is an inconsistency, the court, the immigration court, never gave my client an opportunity to reconcile the inconsistency. And just two weeks ago, in the Wayne case, this court reversed the agency decision for this exact problem. Because the immigration court never, under cases like Risk v. Holder, the law of the circuit states that an immigration court, if it identifies a potential inconsistency — again, I submit that there is not a meaningful one here — but the client needs an opportunity to explain it, and the immigration judge needs to provide an explanation why this explanation is not plausible or is unreasonable. So for the exact reasons, I think, that this court reversed in the Wayne case, I think that this court should reverse in this case. What about the other inconsistency, or adverse credibility finding, I guess, and the other inconsistency identified by the immigration judge as to whether Easter took place before or after his arrest? I think your client claims that he's a Christian and he was arrested because of his religious beliefs. And so the question is, how is his mistake as to whether Easter took place before or after his arrest not significant or significant enough to question his credibility? So I think I would have two points in response, Your Honor. So just to put in context, the government points to a part of the transcript where my client is being peppered on cross-examination with questions, and he stated incorrectly that he got the timing of Easter incorrect. Now, I would like to remind the court that he was talking about an Easter that had occurred three years prior. And Easter is what's called a movable feast. Its date shifts with every year. Technically, it falls on the first Sunday following the ecclesiastical full moon that So he got it wrong, but he candidly explained that he was confused. He candidly stated that he was a relatively new convert to the Christian faith, and at the time of his arrest, he was not as familiar with the calendar of Christian holidays. And so again, under cases like Risk against Holder and the Wang case, the government was required to determine whether his explanation, that he was confused, was implausible. And to be frank, I think that the government's explanation here is a bit tautological because the BIA simply said, we do not find this explanation persuasive when he asserted initially that he had been arrested before Easter. And that's simply a way of stating that there's an inconsistency. We don't find the explanation persuasive because there was an inconsistency. It was your client that brought up Easter, but doesn't seem to know anything about the holiday or how it's celebrated or what its significance is. I mean, but he threw out Easter there in a way that it was memorable to him. And yet he doesn't know what the holiday is. You know, we say some prayers to the Jesus was how he describes Christmas. You know, isn't there lurking here a belief that this whole Christianity thing is not really something very sincerely held by your client? So, Your Honor, I think that it was actually the government that brought it up first, but I do want to address the point. And I would just say that those exact same accusations could be leveled against the petitioner in Lee against Holder. There, the client gave far more, the petitioner gave far more damaging testimony. He claimed to be Christian, did not understand the difference between the Old Testament and the New Testament. He also gave confused and confusing testimony about whether Thanksgiving was a Christian holiday. He thought that it was. Now, even those errors were not enough in this court's view to deem the testimony incredible. And so I think that this problem in his testimony goes less to the heart of the case and is more readily explained. And he was candid that he simply got the timing of the holiday correct. And again, this is something that at this point in time he's testifying about more than a thousand days ago. And I submit that it's a difficult task. Even today, if you ask me what the date of Easter 2016 would be, I don't think that I could respond without first looking it up on a calendar. And I'm not working through a translator and being cross-examined by an underneath your tomb. Thank you. If you'd like to reserve. I will. Thank you very much. May it please the court, Matthew Glover and I represent respondent, the Attorney General. This court should affirm the board's findings because substantial evidence supports both its affirmance of the I.J.'s finding of no credibility and its determination that Petitioner did not meet the requirements for CAT. If I could start with the Wong argument that my friend was discussing. They didn't raise in their brief that the inconsistency going to the passport issuance was one that he had explained and that the BIA didn't or the I.J. didn't give him an additional reason to explain. They argued there was no inconsistency in their briefing. Well, they did argue this in a 28-J. A 28-J is too late to raise that. Is there? I don't see the inconsistency. Can you show me where the inconsistency is? I mean, he says he, you know, isn't it a difference of whether or not he, when he applied versus when he actually received his passport? So, the board adopted the I.J. as to that reason, and the I.J. did give a little bit more explanation. The inconsistency is what I believe Judge Wallace was going to. The process and the timing of, he stated he chose to flee China because he had been arrested, which was April 18th, and he stated that he got his passport, and I understand the question was got and not applied for, but there was no explanation for why he would have applied for a passport just before the alleged persecution if he didn't have any desire to leave China, why he would need a passport. There was no discussion of why that timing occurred that he had applied for a passport. He did explain he applied for the visa solely to flee. Well, but I, that's a good argument, but as you said that the petitioner didn't raise something. I don't know that that's exactly what the BIA stated because it seems like the BIA based its adverse credibility ruling on Mr. Dow's testimony that he applied for a passport after his arrest, and it seems like you're extending that argument for the BIA, and that's not exactly what the BIA stated, so I'm just trying to figure out, you know, how can a nonexistent discrepancy form the basis of an adverse credibility ruling? So, Your Honor, I think what I'm trying to say is that the BIA did say, you know, the IJ made an adverse credibility finding. We affirm that, or we find substantial evidence supports that, and again, they're applying just the substantial evidence, and then they stated they were going to give two examples, and I understand, as you point out, they used the language applied for a passport, but what they are doing there is affirming the IJ's finding of a discrepancy. They could have said that, and they didn't. I mean, what they focused on was the now, but I think we have to rely on what the BIA stated. Again, they do cite to the transcript. I appreciate that they used the applied for, but the IJ was talking about the consistency in the timeline, and it fits similarly with the inconsistency regarding EASTER, which Judge Lasnik was talking with my friend about. He brought up EASTER. Again, it's all about... Let's talk about the EASTER, because it seems that, and I don't think you dispute that the petitioner did consistently refer to the correct date a number of times, or to the one certain date, and it was only once that he said it was before the EASTER. Is that correct? Yes. There were a number of times where he was consistent with what he was saying, correct? So, yes. So, I guess I'm just trying to figure out, in light of our case law, which says we shouldn't be focusing on dates when we're looking at substantial evidence supporting, and I think you're familiar with that case law, why doesn't that fit within the parameter of our case law? So, if I can step back a little bit, Your Honor, the case law talks about not being focused on a mistake of a specific date. The EASTER statement went to his whole testimony, that he had been attending church regularly, and that he then was arrested on April 18th, and he brought up EASTER. They asked him, did you attend services on EASTER? And he placed EASTER after his arrest in the timeline. It goes to the credibility of his explanation. It's sort of his explanation for, again, practicing faith, the alleged incident of persecution, choosing that he, or deciding he needed to flee, and... I guess I'm trying to figure out, and I appreciate your arguments, how that fits into substantial evidence when, in context, he had just recently become Christian. He was acknowledged that he was, you know, what he was learning and how it was, you know, you could tell that he was struggling with the Old Testament and the New Testament. And there was also seemed to be a big time difference between his recollection of the date. So, I just not sure if it's within the substantial evidence when we're talking about how he consistently talked about a date on which he was arrested and then made a statement about the EASTER. So, again, I think the IJ and the BIA and Affirman was looking at the broader timeline. His story hinges upon that April 18th date and his discussion of other things occurring before or after that April 18th date. And on substantial evidence review here, to reverse you would need to find that the record compels the conclusion that these were not inconsistencies that would rise to the level of a credibility finding. And this Court, in the Liang-Jiang case, which we cited, discusses how there was a dissenting opinion from Judge Bea there, and the majority opinion by District Judge Navarro discusses how Judge Bea has one plausible explanation for the Petitioner's description of some events that occurred, but that the BIA and there were two plausible explanations, the record did not compel reversal there. Well, it could compel it, I think, if it's a minor error. Because, as you know, the case law says a minor error, you know, whether or not it can constitute substantial evidence. And I'm just trying to figure out, given that he consistently testified that he was arrested on April 18th, isn't this within the line of cases of Wren and some of the other cases that followed Wren? No, Your Honor. You know, one of the date mistakes that he did make was about when he entered the U.S. October, I think it was October 26th versus August 25th. That might be the minor, I think he misstated it just once, that might be the minor date discrepancy that would be a misstatement. But his consistently testifying that the alleged arrest and persecution occurred on April 18th is the anchoring date for his entire story. And the discrepancies in timing have to do with how other dates fit into that story. I guess, you know, Bonderi, are you familiar with our Bonderi case? It's quoting Villario Lopez, and it states, any alleged inconsistencies in dates, and I think in that case it's whether a petitioner received a certain kind of beating that reveal nothing about the credibility, just trying to figure out if that can form the basis of an adverse credibility finding. That's what, in that case, we said, indeed, we have frequently characterized discrepancies in dates which reveal nothing about this in the science application sphere of his safety to be minor inconsistencies that cannot form the basis of an adverse credibility finding. So, I guess you, and I understand you take issue that this doesn't fall within that, but it seems like it could fall within that. I'm not familiar with that case, Your Honor. I apologize. It's not in either briefs. It's something you'd like additional briefing on. But our argument, and I don't mean to sound like a broken record, is that while he was consistent about the one date, the inconsistency of the other dates goes to the consistency of his story, when and why he chose to leave for the United States, and when this persecution and some of the other pieces of his story. Before your time is up, if I could just ask you a question regarding the country reports and whether or not what the BIA said was sufficient to support that the CAC claim be denied based on whether or not the BIA sufficiently considered the country reports because it appears that the BIA denied the claim in one sentence without mentioning the reports or the record. Is that sufficient? Yes, Your Honor. We believe it's sufficient, and I think we say it in our brief cases like Cole. I would acknowledge that Cole does say they said there's nothing in the record. Here the BIA says respondent has not established. I would think that when he has not established, that would be with the evidence he put in the record. The government didn't put any country reports or evidence in the record on that, and so while they didn't use the phrase record there, I read the respondent has not established or our position is that the statement that the respondent has not established, he's more likely than not to be tortured in China, is stating that in light of the country reports and all of the I think there were some other UN paper in the record as well, but in light of all of that evidence. But I would concede that they didn't use the phrase record, but we think that means the same thing. And the only other thing I would say is if you have no further questions. Thank you. Thank you very much. Appreciate your argument, Mr. Glover. You have just under a couple minutes here. Thank you, Your Honor. My time is limited, so I will invite the court to ask any questions if there's anything on the court's mind. But if not, I would point just to one what I think is really key here, and that's the BIA's explanation about this purported inconsistency about when he applied for the passport. So on page four of the he had applied for his passport after his arrest. And what it cites to there is the portion of the transcript where he's talking about when he got the passport and when he physically picked it up. Now, after the fact, in the government's briefs, the government tries to cobble it together from other questions. Why did you apply for asylum? And I agree, Judge Wallace, I think it's very easy to imagine a version of the events in which somebody in this situation made that more precise statement. Oh, I applied after all of the events occurred. The problem, however, is that my client never actually gave this testimony. And I think that the standard of review here really just asks whether the government's decision is supported by substantial evidence. And what the government is pointing to here is imagined evidence. Even if it's plausible, there is just nothing in this record. Now, if this court thinks that it's a close factual question, I would submit that the answer would be to remand so that the government can more fully pursue this in further administrative proceedings, just like this court did in the Wayne case. And I would submit that there was a very similar discrepancy in the Wayne case, yet for similar reasons, it was based on clumsy cross-examination and confusion and I see that my time is up, so I would just ask that. Let me just ask a question. Does this fall within the rule that we've had that we have to feel compelled that there should be a different factual finding than was found by the board? I think that it does, Your Honor. The standard simply asks the government, all that it asks is that the government's decision be supported by substantial evidence. And I think that here, I think the court understands that. And I suspect there's a good reason for it, I hope, that the person who's looking at the individual has a much better view as a judge of whether the person is being accurate. Yes, Your Honor. For some reason, we give a far more deference to a district court judge than we do to an I.J. But we do indicate that we have to feel compelled. What is the key that would say to us, you're compelled, that there isn't enough there that you can just go ahead with the board and with the I.J. who are much closer to the case? I think the key, Your Honor, is that the BIA said he testified that he applied to apply for a passport on this date. And it cites to two pages of the administrative record. And in those two pages, you will not find that testimony. That is my argument. And that is why the court should be compelled to reverse and grant the petition. The court has no further questions. I will thank you for this time. Thank you, Mr. Mayor Cantu. Again, thank you both for your presentations here today. The case of Zhang Chao versus William P. Barr will be submitted.
judges: Wallace, Murguia, Lasnik